CLARA CANTRELL, by next friend, *v.* COUNTY OF DAVIDSON and G. M. D. CANTRELL.

### October Term, 1877.

MARRIED WOMAN—BILL TO HAVE RIGHTS IN LAND DECLARED. — A married woman may, by next friend, file a bill in chancery against her husband and a third person, the last of whom has entered upon and ejected her from land owned by her in fee at time of her marriage, to have her rights in the land set up and declared, although the wrongful possessor may have adversely held the land long enough to bar a joint action by husband and wife to recover the possession, and she may not be entitled to possession until her husband's death, and although the husband, in anticipation of the

marriage, had executed an instrument, duly proved and registered at the time, by which he, after reciting the intended marriage, and his desire that the land should remain with the wife to her separate use during coverture and her life, undertook to convey to his wife all the right, title, and interest which he might acquire by the marriage, subject to the limitation that if she died before him the land should vest in him for life, with remainder in fee to the children of the marriage, and, in default of children or the representatives of children, to him in fee.

*Watson & Trimble*, for complainant.
*Dodd*, for defendants.

THE CHANCELLOR: — On demurrer. The complainant and the defendant G. M. D. Cantrell intermarried in November, 1849, the complainant being then the owner in fee, by descent from her father, of a lot in Nashville, the subject-matter of the suit. Previous to the marriage, and during the same month, G. M. D. Cantrell executed an instrument under seal, duly proved and registered at the time, by which, after reciting the intended marriage, and his desire that the land and other property of his wife should remain with her, " to her sole and separate use, support, and maintenance during her natural life and the said contemplated marriage," he undertakes to " remise, release, enfeoff, and convey " to the said Clara all the right, title, claim, and interest he might acquire in and to the said property by the marriage, subject to the limitation that if she died before him, then the property should vest in him for and during his life, with remainder in fee to the children of the marriage, and in default of children, or the representatives of children, to him in fee. In the month of February, 1851, and while complainant was seized and possessed of the property in controversy, the defendant, the county of Davidson, " entered upon, took possession of, and unlawfully ejected her " from the said land, erected a public jail thereon, and has since had, and now has, the possession thereof. The complainant asks that the cloud thus created on her title be removed, that she be restored to the pos-

session of the property, and that the county of Davidson be held to account for rents and profits. The ground of demurrer to the bill is, that the right of action is legal, and the remedy at law.

If we leave out of view the instrument executed by G. M. D. Cantrell in anticipation of the marriage, the case made by the bill is of a disseizin of husband and wife of the realty of the wife, held by her in fee, by a third person, and adverse possession by the disseizor for such a length of time as to bar the right of action of the husband. The law regulating the rights of the parties upon such a state of facts has been repeatedly announced by our Supreme Court. By marriage, a husband gains an estate of freehold in the inheritance of his wife, which may continue during their joint lives, and may by possibility last during his own life. He is not, however, solely seized, but jointly with his wife. During the existence of the coverture he is not tenant by the curtesy, and cannot be unless he survive his wife; and, therefore, has no particular interest or estate separate from the fee-simple estate in his wife. If there be a disseizin during the coverture, it is a disseizin of the entire joint estate, and they must jointly bring suit to recover the possession. And if they fail to do so, their joint right of action will be barred by seven years' adverse possession. In such case, a joint action by husband and wife is barred at law, and the wife cannot sue alone. *Guion* v. *Anderson*, 8 Humph. 325; *Weisinger* v. *Murphy*, 2 Head, 676; *McClung* v. *Sneed*, 3 Head, 222; *Murdock* v. *Johnson*, 7 Coldw. 605. In this last case, however, upon an application for rehearing, the question was reserved whether in such case the wife might not maintain a bill in equity to set up her rights and remove the cloud from her title, created by the adverse holding, although she would not be entitled to possession until the husband's death. The point reserved has been since resolved in favor of the wife's right, in *Dodd* v. *Benthal*, 4 Heisk. 601, 608, and *McCallum* v. *Petigrew*, 10

Heisk. 394. The court had previously advanced the same doctrine, with a strong intimation that, since the act of 1850, ch. 36 (Code, sec. 2481), the wife may maintain a bill in equity to be restored to the possession of land of which she has been wrongfully deprived, " whether by her husband or a stranger." *Coleman* v. *Satterfield*, 2 Head, 264. And if the husband is estopped of all right of action, either by his voluntary act or laches, it is clear that the wife may come into equity, making him a defendant. She cannot sue at law without him. In this view, if the deed of G. M. D. Cantrell, of November, 1849, had never been executed, the complainant would be entitled to maintain the present bill. Does that instrument deprive her of the right?

In *Young* v. *Smith*, L. R. 1 Eq. 180, a settlement in anticipation of marriage was entered into by and between the intended husband and wife, and trustees for the wife, and signed by all of them, in which it was recited that " it was also agreed, upon the treaty for the said intended marriage," that any property of a certain value which might descend or devolve to the intended wife during the coverture should be settled upon the like trusts of the settlement ; but the covenant, which was intended to carry this recital into operation, was that the husband, if at any time during the coverture property of the value mentioned should descend or devolve to the wife, should execute, or cause to be executed, all such acts as might be necessary for conveying said property upon the trusts declared in the premises. The Master of the Rolls held that the wife was not bound by the covenant, but was entitled absolutely to the property thus devolving to her. See also *Grey* v. *Stuart*, 2 Gif. 398. In *Bass* v. *Wheless*, 2 Tenn. Ch. 534, I held that a similar instrument to the one before us, executed by the future husband alone, operated merely as a limitation of his marital rights. " The idea," I added, " that a future husband, by any instrument executed by him alone, in anticipation of marriage, can tie up the property of his fu-

ture wife so as to place it beyond her control, and settle it in strict limitation upon her and her children, has no warrant in any principle of law of which I have any knowledge." The only effect, therefore, which can be given to the deed of G. M. D. Cantrell is in the limitation of his marital rights. The fee to the land remains in the wife, precisely as if no such instrument had been executed, but the rents and profits became her separate estate by the renunciation of his rights over the same in her favor. In this view, that instrument does not prejudice her right to come into equity under the decisions cited. Those decisions limit the relief to which she is entitled, in the ordinary case of a marriage previous to the act of 1850, and a subsequent disseizin of husband and wife, to a declaration of her rights, postponing the recovery of possession until after the death of the husband. *Dodd* v. *Benthal*, 4 Heisk. 601. But in *Coleman* v. *Satterfield*, 2 Head, 264, where the marriage had been entered into after that act, the opinion of the court was that the wife might, in equity, recover at once possession of the land of which she had wrongfully been deprived, " whether by her husband or a stranger." In the case before us, the marriage took place before the act of 1850 ; and this fact, while it does not affect the jurisdiction of the court, may limit the wife's relief. But the deed of the husband, by settling the rents and profits of the land to the wife's separate use, may enlarge the wife's relief, and certainly does not restrict the jurisdiction. *Prater* v. *Hoover*, 1 Coldw. 544. On the contrary, a separate estate is, as between husband and wife, only cognizable in equity.

The wife's right to come into this court, according to the decisions, depends, not upon the removal of a cloud from the title, in the sense of annulling an actual paper-title, void as to her, but upon the fact that she has no remedy at law, being incapable of suing in that court without her husband, and he being estopped, either by his deed or the bar of the statute of limitations, to join with her in suing ; and this,

whether the adverse holding be without paper-title or under an assurance from a third person. In the latter class of cases, the disseizin is, so far as the wife is concerned, as if the disseizor had "entered upon, took possession of, and unlawfully ejected her." The fact that the defendant claims under an assurance of title from a third person, purporting to convey an estate in fee, is of no importance upon the question of jurisdiction, where the suit is by a married woman, however important it may be where a person *sui juris* comes into this court to try title to land, instead of bringing an action of ejectment at law. A cloud upon the title, created by adverse possession alone, may, under the decisions of our Supreme Court, be as efficacious to confer jurisdiction in this court as a cloud created in any other way. *Almony* v. *Hicks*, 3 Head, 39 ; *Graham* v. *Caldwell*, at Knoxville, June 10, 1876. Be this as it may, the equity of this bill rests upon the ground that the wife cannot sue alone at law, and that the rents and profits sued for are her separate property, the only remedy for which is in equity.

The causes of demurrer assigned do not reach these equities, and the demurrer must, therefore, be overruled.